UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINE GUS CRISTO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION; FINANCIAL INDUSTRY REGULATORY AUTHORITY; JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission; WILLIAM BARR, in his official capacity as United States Attorney General; ROBERT W. COOK, President and Chief Executive Officer of FINRA; SEC employees DOE 1-20; and FINRA employers DOE 1-20,<br><br>　　　　　　　　　　Defendants. | Case No.: 19cv1910-GPC(MDD)<br><br>**ORDER GRANTING DEFENDANTS FINRA AND MR. COOK'S MOTION TO DISMISS AND DENYING PLAINITFF'S MOTION TO STRIKE**<br><br>**[Dkt. Nos. 19, 25.]** |

　　Before the Court is Defendants Financial Industry Regulatory Authority and Robert Cook's, in his capacity as President and CEO of FINRA, ("Defendants") motion to dismiss the complaint for lack of subject matter jurisdiction, and failure to state a claim. (Dkt. No. 19.) Plaintiff filed an opposition and also a motion to strike

Defendants' motion.[1] (Dkt. Nos. 23, 25.) Defendants filed their reply and opposition to Plaintiff's motion to strike. (Dkt. No. 26.) Plaintiff did not file a reply to his motion to strike. Based on the reasoning below, the Court GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion to strike.

## Procedural Background

On October 2, 2019, Plaintiff Constantine Gus Cristo ("Plaintiff"), proceeding pro se, filed a complaint against the U.S. Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), Jay Clayton ("Mr. Clayton"), in his official capacity as Chairman of the SEC, William Barr ("Mr. Barr"), in his official capacity as the United States Attorney General, and Robert W. Cook ("Mr. Cook") in his official capacity as President and Chief Executive Officer of FINRA. (Dkt. No. 1, Compl.) In the complaint, Plaintiff alleges improper FINRA investigation of his Investor Complaint, improper SEC review of FINRA's investigation as well as inconsistent statements/advisements by FINRA and the SEC concerning his attempts to obtain a ruling of ineligibility for arbitration and seeking to return the arbitrable issues back to this Court. (*Id.*) In a prior related complaint, the Court compelled Plaintiff's claims to arbitration in case no. 17cv1843-GPC(MDD).

Along with the Complaint, Plaintiff filed a motion to proceed in forma pauperis ("IFP"). (Dkt. No. 1.) On December 27, 2019, the Court granted Plaintiff's motion to proceed in forma pauperis and directed the U.S. Marshal "to serve a copy of the Complaint and summons upon Defendants as directed by Plaintiff on his completed U.S. Marshal Form 285." (Dkt. No. 6 at 3.) On February 13, 2020, the U.S. Marshal filed Process Receipt and Return on Defendants indicating that Defendants were served with the complaint and summons on January 21, 2020. (Dkt. Nos. 9-10.)

---

[1] The arguments in the opposition and motion to strike are nearly identical to each other.

On April 2, 2020, Plaintiff filed a request for entry of default against FINRA and Mr. Cook. (Dkt. No. 14.) On April 8, 2020, Defendants filed a notice of defective service, and on April 13, 2020, they filed a supplemental declaration in support of defective service and opposition to request for entry of default. (Dkt. Nos. 17, 21.) Default was not entered by the Clerk of Court. On April 10, 2020, Defendants FINRA and Cook filed their motion to dismiss which is fully briefed. (Dkt. No. 19, 23, 26.) In conjunction with his opposition, Plaintiff also filed a motion to strike the motion to dismiss as time barred. (Dkt. Nos. 25, 26.) Defendants filed an opposition but Plaintiff did not file a reply. (Dkt. No. 26.)

## Factual Background

On November 6, 2017, Plaintiff, proceeding pro se, in Case No. 17cv1843-GPC(MMD), filed a First Amended Complaint ("FAC") against Schwab Defendants[2] alleging grievances relating to Plaintiff's Schwab accounts stemming from Schwab Defendants' production of Plaintiff's financial records to the Internal Revenue Service ("IRS") during an audit in 2005/2006 which he did not discover until 2016. (Case No. 17cv1843-GPC(MMD), Dkt. No. 8.) The FAC alleged violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3403, 3404(c), 3405(2), 3407(2), 3410, 3412(b); violations of 18 U.S.C. § 1519; violations of 18 U.S.C. § 241 & § 245(b)(l)(B); violations of 18 U.S.C. § 872; violations of 18 U.S.C. § 1001(a); and violations of 18 U.S.C. § 1341. (*Id.*) Schwab Defendants moved to compel the case to arbitration and on April 11, 2018, the Court granted Defendants' motion to compel arbitration, stayed the case, and ordered the parties to submit a joint status report within 5 days of an arbitration decision. (*Id.*, Dkt. No. 31.)

In August 2018, because the Court had not received a status report of the arbitrator's decision, at the Court's direction, both parties filed a status report. (Dkt. Nos.

---

[2] Defendants include Charles Schwab Corporation, Schwab Holdings, Inc., Charles Schwab & Company, Inc., Charles Schwab Bank and Charles Schwab Investment Management, Inc.

32, 33, 34.)  In his report, filed on September 6, 2019, Plaintiff explained that the day after the Court's order compelling arbitration, on April 12, 2018, instead of filing a Statement of Claim to initiate arbitration, Plaintiff wrote to Mr. Cook, President and CEO of FINRA, requesting FINRA's intervention regarding FINRA Rule 12206(a) which states that "[n]o claim shall be eligible for submission to arbitration under the Code where six years elapsed from the occurrence of the event giving rise to the claim" and requested a letter of ineligibility to provide to this Court.  (*Id.*, Dkt. No. 34 at 2.[3])  On April 13, 2018, Plaintiff also submitted a FINRA Investor Complaint to investigate allegations of deceptive and illegal acts of Schwab Defendants.  (*Id.*)  After unsuccessful letters to FINRA and response to his Investor Complaint, and his unsuccessful application for review with the SEC related to FINRA's oversight, Plaintiff states that he was preparing to file a complaint in district court against the SEC and FINRA to adjudicate violations of the securities laws and FINRA's violation of Article II § 2, Cl. 2. (*Id.* at 8.)  As such, on October 2, 2019, Plaintiff filed the instant complaint against Defendants in this case.

      According to the instant complaint, in 2016, when Plaintiff discovered that Schwab Defendants had provided the IRS his financial records without his consent, he contacted FINRA in order to prosecute his claims against Schwab Defendants but a FINRA agent advised that his claims were ineligible under FINRA Arbitration Rule 12206(a) which states "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence of the event giving rise to the claim."  (Dkt. No. 1, Compl. ¶¶ 4, 51.)  He was advised that because his claims were ineligible for arbitration, he should pursue his claims with a court.  (*Id.* ¶¶ 4, 51.)  Thereafter, relying on FINRA's advice, he filed his complaint against Schwab Defendants in case no. 17cv1843-GPC(MDD) on September 12, 2017.  (*Id.* ¶¶ 5, 52.)  When the Court

---

[3] Page numbers are based on the CM/ECF pagination.

compelled his case to arbitration on April 11, 2018, he wrote a letter to Mr. Cook on April 12, 2018, and hoped to get FINRA's intervention to declare his claims ineligible under FINRA Rule 12206(a) so that he could return his case back to this Court. (*Id.* ¶¶ 6, 66, 67; Dkt. No. 1-9, Ex. U at 1.) On April 13, 2018, Plaintiff also filed a complaint with the FINRA Investor Complaint Center. (Dkt. No. 1, Compl. ¶ 68; Dkt. No. 1-9, Ex. V at 3-4.) In the Investor Complaint, he claimed that Schwab violated the RFPA and other laws. (*Id.*) The letter also referred to his lawsuit against Schwab Defendants, the Court's order compelling arbitration, and his April 12 letter to FINRA seeking assistance for a determination of ineligibility under Rule 12206(a). (*Id.*)

On April 19, 2018, the Executive Vice President and Director of Dispute Resolution responded to the April 12 letter stating "we do not have any independent authority to invalidate a court order" and "[t]he panel determines whether a claim meets the six-year eligibility requirement by reviewing the submissions, pleadings and arguments of the parties." (Dkt. No. 1, Compl. ¶ 69; Dkt. No. 1-9, Ex. W at 6.)

On May 8, 2018, FINRA's Principal Investigator responded to Plaintiff's Complaint stating that it completed its review which included submissions by Plaintiff and additional details they collected during the examination process, and closed the case. (Dkt. No. 1, Compl. ¶ 71; Dkt. No. 1-9, Ex. Y at 11.) FINRA explained that, "if new information develops, FINRA may re-open its investigation." (*Id.*)

Disturbed that FINRA closed its investigation without interviewing Plaintiff, he responded with a letter on May 14, 2018. (Dkt. No. 1, Compl. ¶ 72; Dkt. No. 1-9, Ex. Z at 12.) In that letter, he expressed his dissatisfaction and also noted that he was seeking a decision solely on the eligibility of his claims under Rule 12206 which was missing from the decision. (Dkt. No. 1-9, Ex. Z at 13.) On June 4, 2018, the Principal Investigator called Plaintiff and he was further disturbed when he learned that an investigation occurred in 2016 prior to his filing of the Investor Complaint. (Dkt. No. 1, Compl. ¶ 73.) He asked that she reopen the investigation. (*Id.* ¶ 74.) Since then, no response has been made concerning why FINRA opened an investigation in 2016, why it was closed

without Plaintiff's involvement or knowledge, and whether FINRA would reopen its investigation. (*Id.* ¶ 76.)

As a result, on June 5, 2018, Plaintiff filed an Application for Review with the SEC seeking review of FINRA's decision to close its investigation "without any interview or contact with Cristo." (*Id.* ¶ 77; Dkt. No. 1-9, Ex. AA at 15.) He requested that the SEC review FINRA's decision and declare his claims ineligible for arbitration. (Dkt. No. 1-9, Ex. AA at 18.) While FINRA was directed to submit a certified copy of the record, (Dkt. No. 1, Compl. ¶ 78, Ex. BB at 20), FINRA's Associate Counsel responded that it did not have any documents or a record. (Dkt. No. 1, Compl. ¶ 83, Ex. EE at 26.) On July 18, 2018, the SEC Commission issued a briefing schedule as to its jurisdiction. (Dkt. No. 1, Compl. ¶ 85; Dkt. No. 1-10, Ex. GG at 1.) On June 3, 2019, after full briefing by the parties, the SEC Commission issued its opinion and dismissed the appeal for lack of jurisdiction. (Dkt. No. 1, Compl. ¶ 92; Dkt. No. 1-12, Ex. NN at 58.)

In response to the Court's order on September 12, 2019 directing Plaintiff initiate arbitration, Plaintiff filed a Statement of Claim on September 16, 2019. (*Id.* ¶¶ 11, 94.) On September 23, 2019, FINRA responded stating that he had to correct two deficiencies within 30 days or it would dismiss his claim and retain the non-refundable filing fee. (*Id.* ¶¶ 12, 95.) On December 9, 2019, Plaintiff filed a motion to dismiss FINRA Arbitration No. 19-02822. (Dkt. No. 19-2, Dettmer Decl., Ex. A.) On March 26, 2020, the arbitration panel denied the motion to dismiss FINRA Arbitration No. 19-02822. (Dkt. No. 19-2, Dettmer Decl. Ex. B.) In its order, the panel noted that this Court determined that FINRA is the appropriate forum to hear the case and that it "does not have the authority to review the District Court's decision and will not do so." (*Id.* at 2.) In that order, the arbitration panel directed that the parties submit four alternative dates and times for the Initial Pre-hearing Conference Call by April 8, 2020. (*Id.* at 3.) Therefore, the arbitration appears to be currently pending before FINRA.

In the Complaint, Plaintiff alleges four causes of action for declaratory and injunctive relief against Defendants. The injunctive relief on all causes of action seeks to enjoin the arbitration from proceeding and ordering the matter back to the jurisdiction of this Court. As to declaratory relief, in the first cause of action, he seeks a declaration that FINRA arbitrators are not "constitutional officers" under the Appointments Clause and cannot rule on constitutional issues. (Dkt. No. 1, Compl. ¶¶ 98-111.) In the third cause of action, Plaintiff seeks a declaration that FINRA violated the due process clause with respect to its investigation of Schwab Defendants, *(id.* ¶¶ 123–124), and that the FINRA arbitration will violate his due process rights because the arbitration lacks the procedures that are available in federal court, and because the arbitrators are barred from ruling on constitutional claims, *(id.* ¶¶ 125–126). The fourth cause of action seeks declaratory relief stating that the FINRA arbitration panel is not authorized to rule on RFPA violations because under the general federal question jurisdiction statute, 28 U.S.C. § 1331, "jurisdiction is proper only in the U.S. District Court," and so "FINRA arbitration is not authorized, and therefore unlawful." (*Id.* ¶¶ 127-132). Finally, the fifth cause of action seeks a declaration that FINRA Rule 12206(c) violates the Equal Protection Clause due to the inconsistency between Rule 12206(a) and Rule 12206(c) which creates bias and gives FINRA power to unilaterally dictate whether a claim will be barred. (*Id.* ¶¶ 133-146.)

**Discussion**

**A      Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a party to raise by motion the defense of "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b) 1. In this circuit, a "ripeness" claim is properly raised with a 12(b)(1) motion. *See Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544 n. 1 (9th Cir. 1994) (finding "mootness" and "ripeness" properly challenged under Rule 12(b)(1)).

The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction by requiring . . . that plaintiffs have standing and that claims be 'ripe '

for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121 (9th Cir. 2010). Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendants raise a facial attack.

In a facial attack, the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. *Id.* The factual allegations in the complaint are assumed to be true. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a

complaint to survive a motion to dismiss, the non conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**C.    Service of Process**

While Defendants move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim, in opposition, Plaintiff does not address the merits of Defendants' argument but instead contends, as a threshold matter, that the motion to dismiss is "null and void" as time barred and should be stricken as not timely filed under Rule 12(a)(1)(A)(i), requiring a motion to dismiss to be filed within 21 days of being served with the complaint and summons. (Dkt. No. 23 at 8.) He also argues that the responsibility of any alleged defect in service falls on the U.S. Marshal because once he was granted IFP status, the responsibility of service fell onto the U.S. Marshal. (*Id.* at 16-17.) Defendants reply that service was defective because only one Defendant, Mr. Cook, received a copy of the complaint and summons, and the service did not include the required copy of a notice and acknowledgement of receipt of summons and complaint.

The Court lacks jurisdiction over any defendants and cannot consider the merits of the case if the plaintiff has not properly served the defendants. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4"); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied").

Federal Rule of Civil Procedure 4(e) states in relevant part that service may be effected (1) "pursuant to the law of the state in which the district court is located . . . ;" or

(2) "by delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e). Under California state law, "[a] copy of the summons and of the complaint shall be mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgment provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender." Cal. Civ. Proc. Code § 415.30.[4]

Here, the U.S. Marshall sent by certified mail two copies of the summons and complaint addressed to Mr. Cook and FINRA, in one submission, but a copy of a notice and acknowledgement of receipt of summons was not received as required by section 415.30. (Dkt. No. 21, Miller Decl. ¶ 2.) Under California law, service is valid only if the acknowledgement of receipt is completed and if the acknowledgement is returned to the sender. *See Barlow v. Ground*, 39 F.3d 231, 234 (9th Cir. 1994) ("[a]lthough California law does permit service of a summons by mail, such service is valid only if a signed acknowledgment is returned and other requirements are complied with"); *Bovier v. Bridgepoint Education/Ashford Univ.*, Case No.: 3:17-cv-01052-GPC-JMA, 2017 WL 4922978, at *2 (S.D. Cal. Oct. 30, 2017) ("the Court will quash Plaintiff's service of summons for failure to strictly comply with the notice and acknowledgment and return envelope requirements of Section 415.30."); *Sims v. Cantu*, No. 2:16-cv-0204 JAM AC P, 2019 WL 5549895, at *1 (E.D. Cal. Oct. 28, 2019) ("service under § 415.30 is not complete until the acknowledgement of receipt is completed, and then only if the acknowledgement is returned to the sender.").

Here, service was not proper as the notice and acknowledge of receipt was not provided to Defendants and not returned to the sender. While Rule 4(c) provides that a

---

[4] Under Rule 4, a corporation being served in a judicial district of the United States must be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . " Here, FINRA was supposedly served according to Rule 4(e)(1).

court may order the United States Marshal to effect service under the IFP statute, Fed. R. Civ. P. 4(c)(3), Rule 4(c) also provides that the "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1). It is Plaintiff's responsibility to provide all the information necessary and the U.S. Marshal merely serves according to the information provided by the plaintiff. *See McIntyre v. NaphCare, Inc.*, No. 16-CV-2107 JCM (BNW), 2016 WL 1243785, *1 (D. Nevada Mar. 16, 2020) ("plaintiff's failure to complete service cannot be blamed on the USM. The record shows that plaintiff failed to provide the USM with reliable information to serve. . ."); *Aguirre v. Monk*, No. C 09-763 MHP, 2011 WL 2149087, *14 (N.D. Cal. June 1, 2011) ("Although the Court can and does have the U.S. Marshal serve process on defendants routinely in in forma pauperis cases, it is the plaintiff's responsibility to provide a name and address for each defendant to be served."). Therefore, Plaintiff's argument that the U.S Marshal is responsible for proper service is without merit. Because Plaintiff failed to comply with Rule 4 in serving Defendants, his arguments to strike Defendants' motion to dismiss as being time barred is without merit.

However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)). However, "[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (internal citations omitted).

In *Borzeka*, the Ninth Circuit held that Rule 4 requirements may be excused if "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka v. Heckler*, 739 F.2d 444, 448 (9th Cir. 1984).

Here, Defendants had actual notice of the complaint and summons and they would suffer no prejudice from the defect in service. The Court also concludes that there is a justifiable excuse for the failure to serve properly. Although legally unsupported, Plaintiff's strict construction of the Court's order granting the U.S. Marshal authority over service is not unreasonable and could constitute justifiable good cause. *Borzeka*, 739 F.2d at 447 n.2 ("appellant was proceeding pro se when the defective service was made. We are generally more solicitous of the rights of pro se litigants, particularly when technical jurisdictional requirements are involved."); *see also Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) ("We recognize that the plaintiff represented himself and therefore, in evaluating his compliance with the technical rules of civil procedure, we treat him with great leniency" as to service of discovery). Finally, Plaintiff would be severely prejudiced if his complaint were dismissed on a failure to comply with technical rule. *See Kruska v. Perverted Justice Fdn. Incorporated.org,* No. CV 08–0054–PHX–SMM, 2010 WL 3156089, at *3 (D. Az. Aug. 9, 2010) (plaintiff "would be severely prejudiced if her complaint was dismissed for a mere technical noncompliance").

Accordingly, because the *Borzeka* factors have been met, service on Defendants have been effectuated.[5]

**D.     Defendants' Motion to Dismiss**

Defendants' motion to dismiss presents numerous arguments to support dismissal. In his opposition, Plaintiff solely argued that Defendants' motion to dismiss should be stricken as time-barred and failed to oppose the arguments presented in the motion to dismiss. Moreover, Plaintiff could have addressed these arguments in his reply to the motion to strike, but he did not file a reply. Indeed, pro se litigants must comply with the same rules of procedure that govern other litigants. *See American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000) ("a pro se litigant is not

---

[5] The Court declines to consider the waiver of service argument of Defendants as it appears not to be disputed that it was procedurally defective.

excused from knowing the most basic pleading requirements."). Because Plaintiff has failed to oppose the arguments, they are conceded and waived and the Court GRANTS Defendants' motion to dismiss as unopposed. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by failing to raise them in opposition to motion for summary judgment); *see also Lee v. Summit Tr. Servs., LLC*, No. CV 19-3814-DMG (EX), 2020 WL 1249971, at *3 (C.D. Cal. Jan. 22, 2020) (granting motion to dismiss because plaintiff's opposition "[did] not address Defendants' arguments to dismiss" and thus "conceded that those claims should be dismissed").

Nonetheless, the Court also considers Defendants' ripeness and res judicata arguments as additional reasons why dismissal of the Complaint is warranted.[6]

**E.  Ripeness**

Defendants argue that the claims are not ripe and should be dismissed. (Dkt. No. 19 at 20-21.) Since the arbitration is ongoing, any challenge to events occurring during the arbitration is not ripe for review as the outcome is unknown. (*Id.*) Moreover, the record upon which a court would determine whether Plaintiff's or Schwab Defendants' rights have been violated does not yet exist. (*Id.*)

Article III of the Constitution limits federal court jurisdiction to adjudicate actual cases and controversies, and not to render advisory opinions. *See Rhoades v. Avon Products, Inc*. 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co*., 344 U.S. 237, 244 (1952)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter

---

[6] Defendants allege numerous reasons why the complaint should be dismissed with prejudice. However, ripeness and res judicata are dispositive of all claims in the Complaint.

jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir. 1990). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 57, n. 18 (1993)).

The ripeness inquiry is "intended to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009), *cert. denied*, 558 U.S. 1158, (2010). A question is fit for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Cardenas v. Anzai,* 311 F.3d 929, 934 (9th Cir. 2002) (internal quotation marks omitted); *see also United States v. Streich*, 560 F.3d 926, 931 (9th Cir.), *cert. denied*, 558 U.S. 920 (2009).

"The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (*en banc*)). The question presented is whether the injury is "definite and concrete, not hypothetical or abstract" and whether the harm is "imminent." *Thomas*, 220 F.3d at 1139.

To evaluate the prudential component of ripeness, courts should consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner,* 387 U.S. 136, 149 (1967) (*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *U.S. West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). "'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship

and would entail more than possible financial loss.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted).

The case of *Young Habliston* is instructive. *See Young Habliston v. Finra Regulation, Inc.*, Civil Action No. 15-2225 (ABJ), 2017 WL 396580, at *5 (D.D.C. Jan. 27, 2017). In the case, the plaintiffs, dissatisfied with a pending arbitration proceeding against Wells Fargo Advisors, LLC, filed a complaint against FINRA Regulation, Inc. *Id.* at *1. The plaintiffs alleged that FINRA Regulation failed to provide a fair arbitration forum because the arbitrators were biased, their procedural rulings to date have been unfair, they failed to properly carry out their regulatory duties, and the binding arbitration provisions contained in the brokerage contracts were void or unenforceable. *Id.*

As an initial matter, because the plaintiffs failed to oppose a number of the defendants' arguments, they were dismissed as conceded. *Id.* at *4. On the remaining count, the plaintiffs alleged that their constitutional rights under the due process and equal protection clauses were violated due to an allegedly unfair arbitration process. *Id.* at *5. However, the Court concluded that the issue was not ripe because the arbitration has not yet concluded, and the outcome was unknown and could be in the plaintiffs' favor. *Id.* Therefore, any alleged bias on the part of FINRA Regulation's arbitrators has not yet produced any adverse consequences, and the record upon which one would determine whether plaintiffs' constitutional rights have been violated has not yet been developed. *Id.* Thus, the court concluded that the plaintiffs' claim was not ripe for review and was dismissed. *Id.*

Similarly, here, Plaintiff initiated arbitration on September 2018 and the arbitration is currently pending before FINRA. The outcome of the arbitration has yet to be determined and under an Article III analysis, Plaintiff has not shown and cannot show that he has suffered any concrete injury or that any harm is imminent. *See e.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019-20 (1984) (challenge to constitutionality of arbitration scheme not ripe for resolution because Monsanto "did not

allege or establish that it had been injured by actual arbitration under the statute"); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340-41 (11th Cir. 2000) ("There is at most a 'perhaps' or 'maybe' chance that the arbitration agreement will be enforced against these plaintiffs in the future, and that is not enough to give them standing to challenge its enforceability."). Further, as to prudential concerns, there has not been any adverse consequences from the arbitration since it is still pending, the factual record is currently still being developed in the FINRA arbitration and there is no indication of any immediate hardship. Therefore, prudential considerations support dismissal. Accordingly, the Court lacks subject matter jurisdiction as the claims challenging the arbitration are not ripe.

**F.     Res Judicata**

Defendants also move to dismiss claims in the complaint arguing they are barred by res judicata. (Dkt. No. 19 at 18.)

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in [a] prior action." *Owens v. Kaiser Fdn. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (*quoting Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). Res judicata applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.*

Four criteria are used to determine whether a suit involve the same claim or cause of action: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. *Mpoyo v. Litton Electro–Optical Sys.,* 430 F.3d 985, 987 (9th Cir. 2005). "Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted

subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1078 (9th Cir. 2003) (quoting *United States ex rel. Barajas v. Northrop Corp.,* 147 F.3d 905, 909 (9th Cir. 1998)).  Therefore, any "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.*

The question on identity of claims is "whether the two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Fdn. Health Plan, Inc*., 244 F.3d 708, 714 (9th Cir. 2001) (quotation and citation omitted).  Here, the claims in both cases concern the alleged violations of Plaintiff's privacy rights by Schwab Defendants and the arbitration clause.  (*Compare* Case No. 17cv1843-GPC(MDD), Dkt. No. 8, FAC *and* Dkt. No. 28 *with* Dkt. No. 1, Compl. ¶¶ 32-50.)  When opposing Schwab's motion to compel arbitration, Plaintiff raised many of the same arguments that he raises again in this case.  For example, he argues procedural unconscionability based on the nature of the underlying arbitration agreement and the size of the font of that agreement, and also argues substantive unconscionability based on supposed limits in the FINRA arbitration process.  (*Compare Cristo v. Charles Schwab Corp.*, Case No. 17cv1843-GPC(MDD), 2018 WL 1737544, at *5 (S.D. Cal. Apr. 11, 2018), *with* Dkt. No. 1, Compl. ¶¶ 153-161.) In the prior case, Plaintiff also argued as in this case that he is barred from seeking arbitration because his claims were ineligible but the Court noted that the issue concerning eligibility is one for the arbitrator.  *Cristo*, 2018 WL 1737544, at *3 n. 2. Further, in this case, Plaintiff also raises additional arguments such as FINRA's inability to address constitutional claims and RFPA claims; however, he could have raised those issues in the prior case but did not.  Those additional claims are subject to res judicata.

Second the Court's order compelling arbitration is a final judgment on the merits. *See Green Tree Fin. Corp. v. Alabama v. Randolph*, 531 U.S. 79, 86-87 (2000). (under the FAA, an order compelling arbitration is a "final decision with respect to arbitration,"

17

because it "ends the litigation on the merits and leaves nothing more for the court to do but to execute judgment.").

Third, as to privity, while the parties need not be identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Preservation Council*, 322 F.3d at 1081 (*quoting In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)). Privity is a "flexible concept dependent on the particular relationship between the parties in each individual set of cases . . . ." *Id.* at 1081-82.

Plaintiff was party to the prior proceeding. While FINRA[7] was not a party prior action, the Court ordered arbitration with FINRA and in this case, Plaintiff seeks to enjoin arbitration with FINRA and as such, there is sufficient commonality of interest.

Because Plaintiff seeks to re-litigate the same issues that the Court compelled to arbitration, they are barred by res judicata. In fact, Plaintiff's complaint seeks to undermine the Court's prior order compelling arbitration. Instead of complying with the Court's order, Plaintiff sought to seek relief outside of arbitration, and as a result, alleges numerous claims due to his frustration and dissatisfaction with the actions of FINRA and SEC. Plaintiff must comply with the Court's prior order compelling arbitration prior to raising claims challenging the process.

Once the arbitration panel issues its decision, Plaintiff may seek to vacate or confirm the arbitration award. *See* 9 U.S.C. § 10. Under the FAA, a court may vacate an arbitration award on the following grounds: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in

---

[7] The Court also notes that Plaintiff may have improperly named FINRA as a defendant. *See Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (2d Cir. 1982) (in discussing arbitral immunity, noting that "[a]rbitrators have no interest in the outcome of the dispute and should not be compelled to become parties to that dispute"; adding that "[a]n aggrieved party alleging a due process violation in the conduct of the proceedings, fraud, misconduct, a violation of public policy, lack of jurisdiction, etc., by arbitrators should pursue remedies against the 'real' adversary through the [FAA] appeal process").

refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(1)-(4).  Therefore, Plaintiff may seek relief from the arbitrator panel's decision once it is completed but not before.

Accordingly, the Court GRANTS Defendants' motion to dismiss as barred by res judicata.

## Conclusion

Based on the above, the Court GRANTS Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim with prejudice and DENIES Plaintiff's motion to strike.  The hearing set on May 29, 2020 shall be **vacated.**

IT IS SO ORDERED.

Dated:  May 26, 2020

Hon. Gonzalo P. Curiel
United States District Judge