UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINE GUS CRISTO,<br><br>                                   Plaintiff,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION; FINANCIAL INDUSTRY REGULATORY AUTHORITY; JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission; WILLIAM BARR, in his official capacity as United States Attorney General; ROBERT W. COOK, President and Chief Executive Officer of FINRA; SEC employees DOE 1-20; and FINRA employers DOE 1-20,<br><br>                                   Defendants. | Case No.: 19cv1910-GPC(MDD)<br><br>**ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**[Dkt. No. 31.]** |

   Before the Court is Defendant U.S. Securities and Exchange Commission, Jay Clayton, in his official capacity as Chairman of the SEC, and William Barr's, in his official capacity as the United States Attorney General, (collectively "Federal Defendants") motion to dismiss for lack of subject matter jurisdiction under Federal Rule

of Civil Procedure ("Rule") 12(b)(1) and 12(h)(3).  (Dkt. No. 31.)  Plaintiff filed an opposition.  (Dkt. No. 33.)  Defendants filed their reply.  (Dkt. No. 34.)   Based on the reasoning below, the Court GRANTS Federal Defendants' motion to dismiss.

## Procedural Background

On October 2, 2019, Plaintiff Constantine Gus Cristo ("Plaintiff"), proceeding pro se, filed a complaint against the U.S. Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), Jay Clayton ("Mr. Clayton"), in his official capacity as Chairman of the SEC, William Barr ("Mr. Barr"), in his official capacity as the United States Attorney General, and Robert W. Cook ("Mr. Cook") in his official capacity as President and Chief Executive Officer of FINRA.  (Dkt. No. 1, Compl.)  In the complaint, Plaintiff alleges improper FINRA investigation of his Investor Complaint, an unconstitutional arbitration before FINRA, improper SEC review of FINRA's investigation as well as inconsistent statements/advisements by FINRA and the SEC concerning his attempts to obtain a ruling of ineligibility for arbitration and seeking to return the arbitrable issues back to this Court.  (*Id.*)  In a prior related complaint, the Court compelled Plaintiff's claims to arbitration in case no. 17cv1843-GPC(MDD).

On May 26, 2020, the Court granted FINRA and Mr. Cook's motion to dismiss and found Plaintiff's claims were not ripe and barred by res judicata and denied Plaintiff's motion to strike FINRA and Mr. Cook's motion to dismiss.  (Dkt. No. 29.)  On the same day, the Court also denied Federal Defendants' motion to dismiss for insufficient service of process and denied Plaintiff's motion to strike Federal Defendants' motion to dismiss.  (Dkt. No. 30.)  On June 1, 2020, Federal Defendants filed the instant motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and 12(h)(3) arguing that the claims are not ripe and barred by res judicata.  (Dkt. No. 31.)

/ / /

/ / /

/ / /

/ / /

**Factual Background**

On November 6, 2017, Plaintiff, proceeding pro se, in Case No. 17cv1843-GPC(MMD), filed a First Amended Complaint ("FAC") against Schwab Defendants[1] alleging grievances relating to Plaintiff's Schwab accounts stemming from Schwab Defendants' production of Plaintiff's financial records, without his consent or knowledge, to the Internal Revenue Service ("IRS") during an audit in 2005/2006 which he did not discover until 2016. (Case No. 17cv1843-GPC(MMD), Dkt. No. 8.) The FAC alleged violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3403, 3404(c), 3405(2), 3407(2), 3410, 3412(b); violations of 18 U.S.C. § 1519; violations of 18 U.S.C. § 241 & § 245(b)(l)(B); violations of 18 U.S.C. § 872; violations of 18 U.S.C. § 1001(a); and violations of 18 U.S.C. § 1341. (*Id.*) Schwab Defendants moved to compel the case to arbitration and on April 11, 2018, the Court granted Defendants' motion to compel arbitration, stayed the case, and ordered the parties to submit a joint status report within 5 days of an arbitration decision. (*Id.*, Dkt. No. 31.)

In August 2019, because the Court had not received a status report of the arbitrator's decision, at the Court's direction, both parties filed a status report. (Dkt. Nos. 32, 33, 34.) In his report, filed on September 6, 2019, Plaintiff explained that the day after the Court's order compelling arbitration, on April 12, 2018, instead of filing a Statement of Claim to initiate arbitration, Plaintiff wrote to Mr. Cook, President and CEO of FINRA, requesting FINRA's intervention regarding FINRA Rule 12206(a) which states that "[n]o claim shall be eligible for submission to arbitration under the Code where six years elapsed from the occurrence of the event giving rise to the claim" and requested a letter of ineligibility to provide to this Court. (*Id.*, Dkt. No. 34 at 2.[2]) On April 13, 2018, Plaintiff also submitted a FINRA Investor Complaint to investigate

---

[1] Schwab Defendants include Charles Schwab Corporation, Schwab Holdings, Inc., Charles Schwab & Company, Inc., Charles Schwab Bank and Charles Schwab Investment Management, Inc.
[2] Page numbers are based on the CM/ECF pagination.

allegations of deceptive and illegal acts of the Schwab Defendants.  (*Id.*)  After writing letters to FINRA and receiving a response to his Investor Complaint, and unsuccessfully applying for review with the SEC related to FINRA's oversight, Plaintiff states that he was preparing to file a complaint in district court against the SEC and FINRA to adjudicate violations of the securities laws and FINRA's violation of Article II § 2, Cl. 2. (*Id.* at 8.)  As such, on October 2, 2019, Plaintiff filed the instant complaint against Defendants in this case.

According to the instant complaint, in 2016, when Plaintiff discovered that Schwab Defendants had provided the IRS his financial records without his consent, he contacted FINRA in order to prosecute his claims against Schwab Defendants but a FINRA agent advised that his claims were ineligible under FINRA Arbitration Rule 12206(a) which states "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence of the event giving rise to the claim." (Dkt. No. 1, Compl. ¶¶ 4, 51.)  He was advised that because his claims were ineligible for arbitration, he should pursue his claims with a court.  (*Id.* ¶¶ 4, 51.)  Thereafter, relying on FINRA's advice, he filed his complaint against Schwab Defendants in case no. 17cv1843-GPC(MDD) on September 12, 2017.  (*Id.* ¶¶ 5, 52.)  When the Court compelled his case to arbitration on April 11, 2018, he wrote a letter to Mr. Cook on April 12, 2018, and hoped to get FINRA's intervention to declare his claims ineligible under FINRA Rule 12206(a) so that he could return his case back to this Court.  (*Id.* ¶¶ 6, 66, 67; Dkt. No. 1-9, Ex. U at 1.)  On April 13, 2018, Plaintiff also filed a complaint with the FINRA Investor Complaint Center.  (Dkt. No. 1, Compl. ¶ 68; Dkt. No. 1-9, Ex. V at 3-4.)  In the Investor Complaint, he claimed that Schwab violated the RFPA and other laws.  (*Id.*)  The letter also referred to his lawsuit against Schwab Defendants, the Court's order compelling arbitration, and his April 12 letter to FINRA seeking assistance for a determination of ineligibility under Rule 12206(a).  (*Id.*)

On April 19, 2018, the Executive Vice President and Director of Dispute Resolution responded to the April 12 letter stating "we do not have any independent

authority to invalidate a court order" and "[t]he panel determines whether a claim meets the six-year eligibility requirement by reviewing the submissions, pleadings and arguments of the parties." (Dkt. No. 1, Compl. ¶ 69; Dkt. No. 1-9, Ex. W at 6.)

On May 8, 2018, FINRA's Principal Investigator responded to Plaintiff's Complaint stating that it completed its review which included submissions by Plaintiff and additional details they collected during the examination process, and closed the case. (Dkt. No. 1, Compl. ¶ 71; Dkt. No. 1-9, Ex. Y at 11.) FINRA explained that, "if new information develops, FINRA may re-open its investigation." (*Id.*)

Disturbed that FINRA closed its investigation without interviewing Plaintiff, he responded with a letter on May 14, 2018. (Dkt. No. 1, Compl. ¶ 72; Dkt. No. 1-9, Ex. Z at 12.) In that letter, he expressed his dissatisfaction and also noted that he was seeking a decision solely on the eligibility of his claims under Rule 12206 which was missing from the decision. (Dkt. No. 1-9, Ex. Z at 13.) On June 4, 2018, the Principal Investigator called Plaintiff and he was further disturbed when he learned that an investigation occurred in 2016 prior to his filing of the Investor Complaint. (Dkt. No. 1, Compl. ¶ 73.) He asked that she reopen the investigation. (*Id.* ¶ 74.) Since then, no response has been made concerning why FINRA opened an investigation in 2016, why it was closed without Plaintiff's involvement or knowledge, and whether FINRA would reopen its investigation. (*Id.* ¶ 76.)

As a result, on June 5, 2018, Plaintiff filed an Application for Review with the SEC seeking review of FINRA's decision to close its investigation "without any interview or contact with Cristo." (*Id.* ¶ 77; Dkt. No. 1-9, Ex. AA at 15.) He requested that the SEC review FINRA's decision and declare his claims ineligible for arbitration. (Dkt. No. 1-9, Ex. AA at 18.) On July 18, 2018, the SEC Commission issued a briefing schedule as to its jurisdiction. (Dkt. No. 1, Compl. ¶ 85; Dkt. No. 1-10, Ex. GG at 1.) On June 3, 2019, after full briefing by the parties, the SEC Commission issued its opinion and dismissed the appeal for lack of jurisdiction. (Dkt. No. 1, Compl. ¶ 92; Dkt. No. 1-12, Ex. NN at 58.)

In response to the Court's order on September 12, 2019 directing Plaintiff initiate arbitration, Plaintiff filed a Statement of Claim initiating arbitration on September 16, 2019. (*Id.* ¶¶ 11, 94.) On September 23, 2019, FINRA responded stating that he had to correct two deficiencies within 30 days or it would dismiss his claim and retain the non-refundable filing fee. (*Id.* ¶¶ 12, 95.) On December 9, 2019, Plaintiff filed a motion to dismiss FINRA Arbitration No. 19-02822. (Dkt. No. 19-2, Dettmer Decl., Ex. A.) On March 26, 2020, the arbitration panel denied the motion to dismiss FINRA Arbitration No. 19-02822. (Dkt. No. 19-2, Dettmer Decl. Ex. B.) In its order, the panel noted that this Court determined that FINRA is the appropriate forum to hear the case and that it "does not have the authority to review the District Court's decision and will not do so." (*Id.* at 2.) In that order, the arbitration panel directed that the parties submit four alternative dates and times for the Initial Pre-hearing Conference Call by April 8, 2020. (*Id.* at 3.) Therefore, the arbitration appears to be currently pending before FINRA.

In the Complaint, Plaintiff alleges two causes of action for declaratory and injunctive relief against Federal Defendants.[3] The injunctive relief on both causes of action seeks to enjoin the arbitration from proceeding and ordering the matter back to the jurisdiction of this Court. As to declaratory relief, in the second cause of action, he seeks a declaration that the FINRA arbitration violates his Fourth Amendment rights due to Attorney General Barr's failure to "investigate the [SEC's] refusal to address allegations of unlawful behavior against FINRA and [Schwab]." (Dkt. No. 1, Compl. ¶¶ 119–120.) The sixth cause of action seeks a declaration that the SEC failed to address Schwab Defendants' deceptive IRA application which and seeks to enjoin the arbitration from proceedings. (*Id.* ¶¶ 148-62).

///

---

[3] While count one references the SEC and Mr. Barr, it appears Plaintiff is merely alleging facts as to their role of oversight of FINRA rather than any cause of action seeking relief. (Dkt. No. 1, Compl. ¶¶ 113-15.)

## Discussion

### A  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to raise by motion the defense of "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b) 1. In this circuit, a "ripeness" claim is properly raised with a 12(b)(1) motion. *See Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544 n. 1 (9th Cir. 1994) (finding "mootness" and "ripeness" properly challenged under Rule 12(b)(1)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction by requiring . . . that plaintiffs have standing and that claims be 'ripe ' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121 (9th Cir. 2010). Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Federal Defendants raise a facial attack.

In a facial attack, the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. *Id.* The factual allegations in the complaint are assumed to be true. *Savage v. Glendale Union High Sch*., 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996).

### B.  Analysis

As a threshold argument, Plaintiff argues that the motion to dismiss should be denied because the Federal Rules bar Federal Defendants' second motion to dismiss citing to Rule 12(g)(2). (Dkt. No. 33 at 8.) Federal Defendants respond that Rule

12(g)(2) does not apply to a motion to dismiss based on lack of subject matter jurisdiction.

Rule 12(g)(2) provides, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(3) states when a court determines at any time that it lacks subject-matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3). Accordingly, a motion to dismiss for lack of subject matter jurisdiction is not limited by Rule 12(g)(2) and may be raised at any stage of the proceedings. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.") (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question sua sponte)). Therefore, contrary to Plaintiff's argument, Federal Defendants may raise the issue of subject matter jurisdiction on a second motion to dismiss.

**1.     Ripeness**

Federal Defendants argue that the claims against them are not ripe because the underlying arbitration is currently pending and Plaintiff cannot show that he has suffered any concrete injury or that any harm is imminent. (Dkt. No. 31 at 4-7.) In opposition, Plaintiff argues that the Federal Defendants' claims are ripe and the Court's ruling on lack of ripeness concerned only FINRA and Mr. Cook. (Dkt. No. 33 at 9.) He then presents numerous arguments concerning the specific failures of the SEC's oversight of FINRA during the pending arbitration.

Article III of the Constitution limits federal court jurisdiction to adjudicate actual cases and controversies, and not to render advisory opinions. *See Rhoades v. Avon Products, Inc*. 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co*., 344 U.S. 237, 244 (1952)). "Ripeness is more than a mere procedural question; it is

determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 502 (9th Cir. 1990). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 57, n. 18 (1993)).

The ripeness inquiry is "intended to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009), *cert. denied*, 558 U.S. 1158, (2010). A question is fit for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Cardenas v. Anzai,* 311 F.3d 929, 934 (9th Cir. 2002) (internal quotation marks omitted); *see also United States v. Streich*, 560 F.3d 926, 931 (9th Cir.), *cert. denied*, 558 U.S. 920 (2009).

"The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (*en banc*)). The question presented is whether the injury is "definite and concrete, not hypothetical or abstract" and whether the harm is "imminent." *Thomas*, 220 F.3d at 1139.

To evaluate the prudential component of ripeness, courts should consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner,* 387 U.S. 136, 149 (1967) (*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *U.S. West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). "'To meet the hardship requirement, a

litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted).

The case of *Young Habliston* is instructive. *See Young Habliston v. Finra Regulation, Inc.*, Civil Action No. 15-2225 (ABJ), 2017 WL 396580, at *5 (D.D.C. Jan. 27, 2017). In the case, the plaintiffs, dissatisfied with a pending arbitration proceeding against Wells Fargo Advisors, LLC, filed a complaint against FINRA Regulation, Inc. *Id.* at *1. The plaintiffs alleged that FINRA Regulation failed to provide a fair arbitration forum because the arbitrators were biased, their procedural rulings to date have been unfair, they failed to properly carry out their regulatory duties, and the binding arbitration provisions contained in the brokerage contracts were void or unenforceable. *Id.* The plaintiffs alleged that their constitutional rights under the due process and equal protection clauses were violated due to an allegedly unfair arbitration process. *Id.* at *5. However, the Court concluded that the issue was not ripe because the arbitration had not yet concluded, and the outcome was unknown and could be in the plaintiffs' favor. *Id.* Therefore, any alleged bias on the part of FINRA's arbitrators had not yet produced any adverse consequences, and the record upon which one would determine whether plaintiffs' constitutional rights had been violated had not yet been developed. *Id.* Thus, the court concluded that the plaintiffs' claim was not ripe for review and was dismissed. *Id.*

Similarly, here, Plaintiff initiated arbitration in September 2018 and the arbitration is currently pending before FINRA. Plaintiff brings claims against Federal Defendants in their alleged role of overseeing FINRA and claims that because Federal Defendants failed to engage in its oversight role by declining to rule on the merits of Plaintiff's claims concerning allegedly improper conduct by the pending FINRA arbitration panel, the pending arbitration must be enjoined. Specifically, in his opposition, he argues that the SEC failed to consider evidence that Schwab Defendants knew his claims were ineligible for FINRA arbitration when they filed the motion to compel arbitration in Case No.

17cv1843, (Dkt. No. 33 at 10), the SEC failed to require FINRA to schedule a hearing on Plaintiff's timely filed motion to dismiss arbitration, (*id.* at 15), the SEC failed to prevent FINRA's panel's manipulation of scheduling "IPHC" conference to CSC's advantage, (*id.* at 16), and the SEC failed to oversee FINRA's bias and partiality. (*Id.* at 18.) These allegations concern conduct currently pending with the arbitration panel which are not yet concluded, and are therefore, not ripe. Further, Plaintiff invokes 9 U.S.C. § 10(a) which provides that an arbitration award can be vacated if the award was procured by corruption, partiality, misconduct or the panel exceeds its powers, and he presents numerous deficiencies or misconduct by FINRA during the pending arbitration. (*Id.* at 19-22.) However, 9 U.S.C. § 10(a) applies once the arbitration has been completed.

As the Court explained in its prior order, (Dkt. No. 27), the outcome of the arbitration has yet to be determined and under an Article III analysis, Plaintiff has not shown and cannot show that he has suffered any concrete injury or that any harm is imminent. *See e.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019-20 (1984) (challenge to constitutionality of arbitration scheme not ripe for resolution because Monsanto "did not allege or establish that it had been injured by actual arbitration under the statute"); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340-41 (11th Cir. 2000) ("There is at most a 'perhaps' or 'maybe' chance that the arbitration agreement will be enforced against these plaintiffs in the future, and that is not enough to give them standing to challenge its enforceability."). Further, as to prudential concerns, there has not been any adverse consequences from the arbitration since it is still pending, the factual record is currently still being developed in the FINRA arbitration and there is no indication of any immediate hardship. Therefore, prudential considerations support dismissal.

Accordingly, the allegations in the complaint against Federal Defendants are not ripe for review.[4]  As such, the Court lacks subject matter jurisdiction as the claims challenging the arbitration are not ripe.

As the Court noted in its prior order, once the arbitration panel issues its decision, Plaintiff may seek to vacate or confirm the arbitration award.  *See* 9 U.S.C. § 10.  Under the FAA, a court may vacate an arbitration award on the following grounds: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. §§ 10(a)(1)-(4).  Therefore, Plaintiff may seek relief from the arbitrator panel's decision once it is completed but not before.[5]

## Conclusion

Based on the above, the Court GRANTS Federal Defendants' motion to dismiss for lack of subject matter jurisdiction.  The hearing set on July 24, 2020 shall be **vacated.**  The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated:  July 17, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] Federal Defendants also question whether the Federal Defendants have "oversight" responsibility to ensure the FINRA arbitration process is "objective" and fair", (Dkt. No. 34 at 3); nonetheless, the issue is premature at this stage.

[5] Because ripeness justifies dismissal of the case for lack of subject matter jurisdiction, the Court need not address Federal Defendants' additional argument seeking dismissal based on res judicata.